500

EVELYN NELL NORTON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 94946. Filed June 7, 1963.

*James C. Soper,* for the petitioner.
*Richard E. Lobedan,* for the respondent.

#### OPINION

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the calendar year 1959 in the amount of $10,595.53. The issue for decision is whether the amount of $13,631.05 which was the total cost to petitioner of the failure of a contractor to properly complete a swimming pool on petitioner's property or any portion of this amount is deductible by petitioner as a theft loss.

All of the facts have been stipulated and are found accordingly.

Petitioner, an individual residing in Piedmont, Calif., filed her Federal income tax return for the calendar year 1959 with the district director of internal revenue at San Francisco, Calif.

On or about May 8, 1958, petitioner entered into a contract with Donald G. Webb, doing business as Paddock Pools of East Bay, for the construction of a swimming pool. At the time this contract was entered into, Webb was a duly licensed contractor pursuant to the Business and Professions Code of the State of California and petitioner was so informed.

The contract set forth the specifications of the pool that was to be constructed and contained a warranty by the contractor that all

construction material shall be of good quality and that construction work shall be done in a workmanlike manner. The total contract price was $9,446.42, and the contract provided that petitioner should pay the contractor 10 percent as a deposit, 60 percent on guniting, 25 percent on placing of cast stone coping, and balance on completion.

Webb commenced construction of the swimming pool and during the course of construction petitioner paid installments aggregating $8,112 upon Webb's representation that the work was being performed as per contract and that the subcontractors and materialmen were being paid. On or about December 18, 1958, Webb ceased work upon the pool construction. At that time the pool was not completed as per contract in that certain pool accessories had not been installed, the fence and gate around the pool area were not complete, the heating and filter systems were not complete, and the electrical work was not complete.

The pool as constructed by Webb was defective in the following respects: (1) The plastic lining and concrete exterior of the pool were cracked and defective; (2) the foundation of the pool was not constructed in accordance with the plans and specifications in that the fill upon which the pool and the adjacent deck area were placed was not sufficiently compacted, the foundation of the pool contained one less concrete pier than was called for in the specifications, and the pool did not rest upon one of the concrete piers actually installed; and (3) the pool did not contain adequate steel reinforcing rods as per contract.

Webb failed to pay certain of his subcontractors, who then filed mechanics' liens against petitioner's property in the aggregate sum of $4,160.94.

Petitioner engaged a civil engineer to inspect the pool after Webb ceased work thereon and was advised that in its then condition it constituted a hazard to the persons and property of petitioner and her neighbors. The most economical method of rectifying the then existing hazard consistent with petitioner's desire to install a swimming pool was to construct a steel pool on the existing pool site.

Petitioner lodged a complaint with the Contractors' State License Board of the State of California and was advised that because of pending disciplinary proceedings against Webb the prosecution of her complaint would be of no avail.

On or about December 22, 1958, Webb was adjudicated a bankrupt in the District Court of the United States in and for the Northern District of California, Northern Division.

By decision dated April 30, 1959, before the Registrar of Contractors, Contractors' State License Board, State of California, it was ordered that the license of Webb doing business as Paddock Pools of East Bay be revoked. This decision was the adoption of a proposed

decision of a hearing officer for the Contractors' State License Board. The hearing was on an accusation of an investigator for the Contractors' State License Board in his official capacity based on his investigation of eight contracts between Webb and certain owners whereby Webb was to construct swimming pools for these owners, but petitioner was not one of the eight owners involved. One of the findings in the decision was that Webb had diverted funds received for the prosecution of each of the eight construction projects and applied such funds to other construction projects, operations, obligations, or purposes, but that the evidence was not sufficiently comprehensive or specific to support a finding of an exact amount of such diversion. However, it was found that the amount of funds diverted from each of the construction projects was substantial.

On July 14, 1959, petitioner filed a proof of claim in Webb's bankruptcy proceeding in the District Court of the United States in and for the Northern District of California, Northern Division, in which she alleged that Webb was at and before the filing of his petition for adjudication of bankruptcy, and still was, liable to her in the sum of $18,366.98. The proof of claim alleged that Webb's liability to petitioner was founded upon the breach of a contractual obligation by Webb to perform services for petitioner in the construction of the swimming pool. Petitioner alleged that Webb had failed in the performance of the contract without cause in failing and refusing to pay subcontractors and materialmen who furnished labor and matrial in connection with the construction of the pool, and had, in an improper and unworkmanlike manner not in conformance with the plans and specifications, done the work to partially complete the pool. The petitioner also alleged that there was no setoff or counterclaim and that petitioner held no security covering this liability. This proof of claim is still pending in the bankruptcy proceeding.

Because of Webb's failure to properly complete his contract, petitioner expended the following sums:

| | |
|---|---|
| Satisfaction of mechanics' liens | $3,178.05 |
| Engineering fees | 341.00 |
| Difference between contract payments to Webb ($8,112) and fair market value of resultant product ($1,000) | 7,112.00 |
| Increased cost of construction of steel pool occasioned by obstruction of concrete pool, which cost was not more than would have been the expense of removing the concrete pool | 3,000.00 |
| | 13,631.05 |

Petitioner on her income tax return for the year 1959 deducted the amount of $14,536.16 with the explanation that this amount was a loss from theft by embezzlement of funds paid in partial performance of swimming pool construction contract, subsequent subcontractors'

claims, and additional expenses incurred to reconstruct the pool to place it in serviceable condition.

Respondent in his notice of deficiency disallowed the claimed deduction with the explanation that the loss claimed had been disallowed since petitioner failed to submit evidence to substantiate that a loss was sustained during the year occasioned by a theft.

Petitioner at the trial and on brief concedes that the amount of the loss claimed in excess of $13,631.05 is not properly deductible but contends that the amount of $13,631.05 is deductible as a theft loss. Petitioner points out that under the wording of sections 484 and 532 of the California Penal Code any person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money or property is guilty of theft.[1] It is also clear from the California case law that the taking of money from another by false representation constitutes theft and we have so recognized in determining whether a claimed loss was properly deductible as a theft loss. *Michael Monteleone*, 34 T.C. 688, 692–693 (1960).

Respondent in his brief does not contend that, knowingly and designedly by false or fraudulent representation, obtaining money is not theft under California law but rather argues that the evidence in this case is insufficient to establish that Webb did have the intent which is a necessary element of a felony. Respondent argues that the evidence in this case shows that Webb did not properly perform the contract or complete the performance of the contract but that such a failure does not amount to theft.

The stipulated facts show that petitioner's payments to Webb were made upon Webb's representation that the work was being performed as per contract and that the subcontractors and materialmen were being paid. It is clear from the evidence that the work was not in fact being performed in accordance with the specifications in the contract and that certain of the subcontractors and materialmen had not been paid. The crucial fact which is not stipulated is that Webb "knowingly and designedly" made the false representation that the work was being performed in accordance with the contract and that the materialmen were being paid.

Petitioner argues that the decision in the case before the Registrar of Contractors of the Contractors State License Board of the State of California, even though involving contracts between Webb and persons other than petitioner, is sufficient to show that Webb's representations must have been knowingly and designedly false. While this decision does show that with respect to certain of the contracts there

---

[1] In *People* v. *Jackson*, 74 P. 2d 1085 (Cal. App. 1937), the court stated (p. 1097), "There is no inconsistency between sections 484 and 532 of the Penal Code, and the applicable provisions of the former have in effect repealed the identical provisions of the latter."

involved Webb did fail to complete the contract and with respect to all of them failed to pay some of the subcontractors and materialmen, there is nothing in this decision dealing with Webb's failure to perform the contracts there involved in accordance with the specifications. The record in this case is totally devoid of any evidence to show that Webb's representations to petitioner that the work on the pool was being performed in accordance with the specifications in the contract, though untrue, were knowingly and designedly so. We cannot assume this crucial fact without proof, and, therefore, hold that the loss sustained by petitioner because of the defective construction of the pool and the consequent causing of increased costs for construction of the pool and engineering fees in connection therewith have not been shown by petitioner to be theft losses.

The situation with respect to the $3,178.05 which petitioner paid in satisfaction of mechanics' liens because of Webb's failure to pay certain of his subcontractors presents a different problem. It is stipulated that petitioner paid the installments aggregating $8,112 upon Webb's representation that the subcontractors and materialmen were being paid. Inherent in this stipulation, since Webb is the contractor, is the fact that Webb knowingly made this false representation to petitioner, and we believe, likewise inherent, is the fact that the false representation was designedly made to induce petitioner to make the payments. The facts do not show what portion of the $8,112 paid by petitioner to Webb had been spent by Webb in paying subcontractors, materialmen, and other costs with respect to the construction of the pool. We said in *Thomas Miller*, 19 T.C. 1046, 1048 (1953), involving a claimed theft loss where a contractor abandoned a contract to construct a building and disappeared:

If the contractor had spent the entire $7,500 on the dwelling, there could be no loss deductible under section 23(e)(3) because in that case there would be no theft, or anything resembling theft, of any of the money paid by petitioners to Landstrom. Likewise, if Landstrom, without spending all of the money paid to him, had placed a structure on the premises having a value equal to or in excess of $7,500, it would be difficult to see wherein there would be any theft, or anything resembling a theft, which would be deductible under section 23(e)(3).

The stipulated facts in the instant case show that the pool placed on petitioner's property had a value of only $1,000, but the evidence does not show what portion of the $8,112 paid by petitioner to Webb had actually been paid by Webb to subcontractors and materialmen or for other expenses in the construction of the pool. However, we believe a reasonable inference from the evidence is that at least the $3,178.05 which petitioner had to pay in satisfaction of mechanics' liens of the $8,112 which petitioner had paid to Webb represented amounts which Webb had not paid out in construction of the pool. Cf. *Thomas*

*Miller, supra.* Under the law of California, we consider this $3,178.05 to constitute a theft loss. In *People* v. *Schmidt*, 305 P. 2d 215 ('Cal. App. 1957), the court had under consideration a situation somewhat similar to the one here involved. In this case the court summarized the evidence on one of the counts which it held was sufficient to substantiate the jury verdict of theft as follows (p. 218) :

As to count V the evidence shows that the loan from Mutual to the Corporation of July 1, 1952, included lots 48 and 51 through 57 of tract 17209, and that in accordance with the contract and in reliance upon the representations by the defendant to Mutual that all bills were paid for construction and labor on the lots above set forth a check was issued by Mutual to the Corporation for $10,330.88, and the funds were received by the Corporation. The representations so made by the defendant were false, as shown by the books of the Corporation as of January 22, 1953, and the funds were not used for the purposes for which they were paid to the Corporation by Mutual, but were used by the defendant for his own purposes as hereinafter related.

We think the evidence here is sufficient to show that with respect to the $3,178.05 petitioner has sustained a theft loss since to this extent Webb's representations that the payment of the money received from petitioner was being used to pay subcontractors and materialmen were false and fraudulent. Cf. *People* v. *Ashley*, 267 P. 2d 271 (Cal. App. Super. 1954).

Respondent in his brief points to the provisions of section 506 of the California Penal Code [2] and states that this section might be dispositive of the instant case except that insofar as it applies to contractors it has been held to be unconstitutional in *People* v. *Holder*, 199 Pac. 832 (Cal. App. 1921) and *People* v. *Bullock*, 268 Pac. 1059 (Cal. App. 1928). As we read the cases cited by respondent, section 506 was held to be unconstitutional because it required imprisonment for debt if the title to payments passed to the contractor, or if such title could not pass under the statute, abridged the right of parties to contract for the passage of such title irrespective of the provisions of the contract itself. The crime covered by section 506 of the California Penal Code is "embezzlement." The crime of "embezzlement" requires that the victim not part with title to his money but entrust it

---

[2] Cal. Pen. Code, sec. 506.
Person controlling or intrusted with property of another; misappropriations; payment of laborers and materialmen as use of contract price

Every trustee, banker, merchant, broker, attorney, agent, assignee in trust, executor, administrator, or collector, or person otherwise intrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, and any contractor who appropriates money paid to him for any use or purpose, other than for that which he received it, is guilty of embezzlement, and the payment of laborers and materialmen for work performed or material furnished in the performance of any contract is hereby declared to be the use and purpose to which the contract price of such contract, or any part thereof, received by the contractor shall be applied. * * *

to another for a specific purpose. The obtaining of property by false pretenses is the false acquisition of both title and possession. *People* v. *Gould*, 270 P. 2d 551 (Cal. App. 1954), and *People* v. *Schmidt*, *supra* at 221. Receipt of money by a contractor upon false representation knowingly and designedly made that subcontractors and materialmen are being paid has been held in California to constitute theft under section 484 of the California Penal Code. *People* v. *Schmidt*, *supra*.

We, therefore, hold that petitioner is entitled to a deduction for a theft loss in the amount of $3,178.05.

*Decision will be entered under Rule 50.*